# In the United States Court of Federal Claims

### No. 18-1847C
### Filed: April 15, 2019

* * * * * * * * * * * * * * * * * *

| | |
|---|---|
| KAREN TUCKER, | * |
| Plaintiff, | * <u>Pro Se</u> Plaintiff; In Forma Pauperis; |
| | * Subject-Matter Jurisdiction; Failure |
| | * to State a Claim; Motion to Dismiss; |
| v. | * Fourth Amendment; Sixth |
| | * Amendment; Civil Rights; Torts; |
| UNITED STATES, | * Breach of Contract. |
| Defendant. | * |

* * * * * * * * * * * * * * * * * *

**Karen Tucker**, <u>pro se</u>, Marlton, New Jersey.

**Albert S. Iarossi**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him were **Lisa L. Donahue**, Assistant Director, Commercial Litigation Branch, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Brach, and **Joseph H. Hunt**, Assistant Attorney General, Civil Division.

## OPINION

<u>HORN. J</u>

### FINDINGS OF FACT

On November 21, 2018, <u>pro</u> <u>se</u> plaintiff Karen Tucker filed a fifty-one-page complaint,[1] in which she makes a plethora of allegations, many of which are difficult to follow. Among other allegations, plaintiff asserts that the defendant was liable for "illegal exaction of money; restitution, restoration to pretrial conditions, legal cost, fees, economic and earning capacity loss, wrongful conviction, deprivation of affective[2] counsel, life, liberty and property interest is deprivation of due process." According to her complaint,

---

[1] Plaintiff attached an appendix, as well as two exhibits, to the complaint. The document labeled as an appendix appears to be a brief Karen Tucker filed in the United States Court of Appeals for the Third Circuit, and the two documents labeled as exhibits appear to be documents Karen Tucked filed in the United States District Court for the District of New Jersey.

[2] Plaintiff's capitalization, emphasis, choice of words, spelling errors, grammatical errors, and fragments of sentences, which appear throughout plaintiff's complaint, have been included unchanged in this Opinion when quoted.

plaintiff seeks "monetary relief, compensatory damages, liquidated damages, treble damages and extraordinary relief." Also on November 21, 2018, plaintiff filed an Application to Proceed In Forma Pauperis, in which plaintiff states that she is "homeless and indigent relying on the kindness of family and friends for food and shelter."

In plaintiff's disjointed complaint, plaintiff alleges "Defendant(s) breach of Medicare Part B Provider contract failing to perform executory contract duty." Plaintiff alleges that she "entered into and agreed to a Medicare Part B Provider contract accepted by the Defendant(s) (exhibit 60) to provide medically necessary podiatry care to beneficiaries of the Medicare Part B Program for claim payments." The plaintiff also states the defendant's "breach" is a "fraudulent statement is fraud Rule 9 (b)" and that the "breach" is due to the "breaching party of their executory contracts duty legal obligation failing to pay claims or issue final determination letters that deprived Plaintiff from affective assistance of counsel." Additionally, plaintiff's complaint refers to a "plea of guilty," without identifying the specific criminal case, stating:

> Plaintiff is innocent on Medicare Part B Provider Count 16 Zala Farley's October 21, 1996 $75-dollar claim plea and factual resume contract under Title 18 U.S.C. § 1347 March 5-10, 1999 judgment contract; fraud Rule 9(b), and did not abandon billing claim payments in the sum certain amount of $1,652,000 dollars doing what the terms of Defendant(s) Medicare Part B Provider contract required to do.

Plaintiff's complaint further asserts a "violation of colorable constitution due process of the 14th Amendment" and argues that her "life, liberty and property interest is deprivation of due process 42 U.S.C. § 1983." Additionally, plaintiff alleges a wide variety of other issues, including "substantive due process error, procedural due process error and violation of the constitution in clear harmful error of law was overlooked by the District Court in fundamental error."

In plaintiff's complaint, Ms. Tucker alleges "violation of her Sixth Amendment right to affective assistance of counsel, is of the most fundamental error character." According to plaintiff's complaint:

> [T]he Defendant(s) suppressed and fabricated evidence, failed to disclose Rule 37 exculpatory material evidence that proved Plaintiff(s) innocence prior to offering and Plaintiff entering into the count 16 plea and factual resume in violation of Brady vs Maryland law that deprived Plaintiff from affective counsel that resulted Plaintiff receiving ineffective counsel that was not well informed and incompetent below the standards under Strickland that ill-advised Plaintiff to make a uniformed decision without knowledge and understanding entering into a plea of guilty when Karen Tucker was unknowingly innocent of count 16 plea and factual resume that does not state a crime or felony of law was committed under Title 18 U.S.C. § 1347 March 5-10, 1999 judgment based on vague laws contrary to law in clear

fundamental error and substantive due process error was in clear harmful error of law entered for judgment.

Plaintiff states that her counsel was ineffective because her counsel allegedly "took the opinion of US Prosecutor Leonard Senerote that Plaintiff may or may not be guilty" and offered "testimony for the Defendant(s) as witness against Plaintiff for the US Prosecutor Peter Winn." Plaintiff argues that she was "not issued by Defendant(s) final determination letters nor paid claim payments in the sum certain amount of $1,652,000 dollars dates of services of medically necessary podiatry care provided from January 1995- February 1998 ordered and signed in writing by referring attending physicians with consent of patients required to do." Plaintiff alleges that she "was wrongfully convicted on inadvertent collateral ground for civil and criminal complaint is a claim for breach of contract and simultaneous breach of contract and fraud Rule 9(b)."

Under a separate section in plaintiff's complaint titled "Contracts Dispute Act, 41 U.S.C. § 7101 et seq. (CDA)," plaintiff states that she "gave notice to Defendant(s) that it owed claims in the total amount of $151,198.00 dollars." Plaintiff asserts that the defendant is "liable" for:

[C]laim payments in the sum certain amount of $1,652,000 dollars, legal fees, cost suit in the amount of $260,000 dollars, Restitution in the amount of $29,000 dollars, economic and earning capacity loss that exceeds $75,000 dollars from January 1995-November 2018 present and Restoration to pre-trial conditions, monetary damages, compensatory damages, liquidated damages, treble damages, relief and extraordinary relief for dismissal of March 5-10, 1999 judgment contract.

In plaintiff's November 21, 2018 complaint in this court, in a section of plaintiff's complaint titled "Where As Relief Sought," plaintiff requests:

I am the Plaintiff that wants a demands for $1,652,000 dollars monetary damages, relief and extraordinary relief and any further alternative relief the Court deems both just and proper. Plaintiff wants to move, motion and petition the Federal Claims Court for:
0. Motion to leave to file Informa pauperis
1. Dismiss COUNT 16 under Title 18 U.S.C. § 1347 March 5-10, 1999 and July 11, 2018 for lack of waiver of sovereign immunity judgment contract pursuant extraordinary relief Rule 60 (b)(1)(2)(3)(4)(5)(6)(2)(d)(1)(3)(e) for any reason to achieve justice
2. Settlement for monetary payments under 28 U.S. Code § 2414
3. Summary judgment pursuant Rule 56
4. Restore Plaintiff to pre-trial conditions
5. Compensatory damages
6. Treble damages
7. Liquidated damages

8. Economic and earning capacity loss from May 6, 1996 -November 2018 present

9. Legal cost, cost of suit, fees, interest $260,000 dollars

10. Restitution $29,000 dollars

11. Remand Rule 12. 1 or transfer or transfer 28 U.S.C. § 1631 and re-open Rule 59 (e) and Rule 60 (b) complaint in District Court for discovery, interrogatories, oral argument, evidentiary hearing and jury trial for all triable matters;

12. Demand for jury trial heard on the merits Fed. Rules of Civ. P. 39 local New Jersey Court Rules 1:8-2(b) and 4:35-1(a) to achieve justice.

13. Oral Argument YES          Evidentiary Hearing Yes

14. JURY TRIAL DEMAND YES


Plaintiff alleges that her complaint "invoke[s] the jurisdiction" of this court and cites a series of statutes, including:

A. Equitable tolling 4(a)(4)(vi) Statutes of Limitations

B. United States as Defendant(s) 28 U.S.Code §1346; 28 U.S.Code §1402, 28 U.S.C.1345 and 1348

C. Court of Federal Claims under 28 U.S.C. § 1292(d)(4)(A)

D. subject matter jurisdiction under The Tucker Act, 28 U.S.C. § 1491 (a)(2),

E. Tucker Act, 28 U.S.C. § 1491; Tucker Act, 28 U.S.C. § 1491(a)(1), Little Tucker Act," 28 U.S.C. § 1346; The Little Tucker Act, 28 U.S.C. § 1346(a)(2)

F. Contract Disputes Act, 41 U.S.C. § 7101 (CDA)

G. The Federal Tort Claims Act (August 2, 1946, ch.646, Title IV, 60 Stat. 812, "28 U.S.C. Pt.VI Ch.171" and 28 U.S.C. § 1346(b)) ("FTCA") is a 1946 federal statute

H. 28 U.S. Code § 2414 - Payment of judgments and compromise settlements

I. Rule 56 Summary Judgement

J. Transfer to cure want of jurisdiction 28 U.S.C. § 1631.

K. 375 False Claims Act Action filed by private individuals alleging fraud against the U.S. Government under 31 U.S.C. § 3729.

L. Equitable tolling 4(a)(4)(vi)

M. Nature of Suit 124 Contract - Medicare Act


Plaintiff asserts that the above-captioned case is not directly related to any pending or previously filed cases in the United States Court of Federal Claims. Plaintiff's complaint, however, does appear to discuss other litigation involving plaintiff in proceedings not before this court, alleging:

1. "District Court Stickney final judgments states the orders written and signed by Dr. Kathleen Martin were valid orders for treatment but not for claim payment of Medicare Part B Provider count 16." Plaintiff argues that there was a

"substantive due process error" and "deprivation of constitution Due Process 42 U.S.C. § 1983." (capitalization in original).

2.   Plaintiff alleges "Defendant(s) Administrative Law Judge Barrett" found that "[p]laintiff's claim was payable and was not a crime or felony violation of Health Insurance Portability and Accountability Act of 1996 neither a breach of the Medicare Part B Provider contract was upheld by Defendant(s) agent Judge Gipe, Medicare Appeals Board." Plaintiff, however, appealed Judge Barrett's decision, which the Medicare Appeals Council (MAC) of the Department of Health and Human Services Departmental Appeals Board denied for review, because Judge Barrett found that the plaintiff had "failed to provide credible contemporaneous medical records that demonstrated medical necessity of these services, as required by Medicare regulations." See Tucker v. Thompson, No.04-3934, 2006 WL 39644, at *1 (D.N.J. Jan. 9, 2006).

3.   Plaintiff then filed a complaint with the United States District Court for the District of New Jersey seeking review of Judge Barrett's decision. Judge Irenas of the United States District Court for the District of New Jersey found that "[t]he evidence clearly supports ALJ Barrett's conclusion that the physicians' orders in the record do not establish the medical necessity of the services rendered by Dr. Tucker." See Tucker v. Thompson, 2006 WL 39644, at *4. Judge Irenas further stated that, in 1996, "Dr. [Karen] Tucker submited claims for Medicare Part B reimbursement for these services, but her claims were denied by the local Medicare carrier. Dr. Tucker sought review of the carrier's initial determination. Upon review, the carrier again denied her claims." Id. at *1. After a hearing before the local Medicare carrier on August 26, 1997, the carrier upheld the denial of plaintiff's reimbursement claim. Id.

4.   In her complaint, plaintiff alleges that she then "appealed the final decision Judge Irenaeus final decision on May 7, 2007 entitled Plaintiff to judicial review filed in NJ District Court on June 1, 2007."

Plaintiff indicates that she is bringing her complaint to "move, motion and petition the Federal Claims Court for an order granting dismissal of July 11, 2018 and March 5-10, 1999 judgments pursuant extraordinary relief 60 (b)(1)(2)(3)(4)(5)(6) (2)(d)(1)(3)(e) for any reason to achieve justice Remand Rule 12.1, Rule 59 (e) and Rule 60 (b) reopen all triable matters."

On February 12, 2019, defendant filed a motion to dismiss in the above-captioned case in this court, requesting that "the Court dismiss for lack of subject matter jurisdiction the complaint filed by plaintiff Karen Tucker, who appears pro se." Defendant argues that, "[l]ike the 120-page complaint Ms. Tucker filed on December 28, 2017 in the District Court for the District of New Jersey (see Tucker v. Hargan, 2018 WL 1336134 (Mar. 15, 2018)), Ms. Tucker's complaint here recites 50 pages of 'incoherent legalese.'" Defendant asserts that "Ms. Tucker's complaint, even when viewed in the most deferential light possible, fails to articulate a claim that is within this Court's jurisdiction." Defendant contends that

"Ms. Tucker's complaint implicates no identifiable money-mandating statute, regulation, contract, or constitutional provision." The defendant's motion to dismiss also asserts that plaintiff's complaint fails to comply with the court's pleading standard, arguing:

> Nor does Ms. Tucker's complaint meet the minimum pleading standard of RCFC [Rules of the United States Court of Federal Claims] 8(a)(2) in any event, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. Id. (quoting Bell Atl., 550 U.S. at 557). Ms. Tucker's complaint completely fails to meet this standard.

On April 8, 2019, plaintiff filed a single-spaced, fifty-page document titled "PLAINTIFF'S MOTION INOPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION," which, like plaintiff's complaint and attachments, are disjointed and difficult to follow. This time, plaintiff attached to her April 8, 2019 filing 375 pages of exhibits, including, for the first time, an exhibit plaintiff titled "Exhibit 60 Medicare Part B Provider Contract."

Prior to filing her complaint in the above-captioned case, plaintiff previously has filed at least eight complaints, six notices of appeal, and one petition for writ of certiorari, some of which involved allegations identical or similar to the allegations in the above-captioned case. See Tucker v. Sec'y Health & Human Servs., 734 F. App'x 89, 90 (3rd Cir.) (holding that "[t]he District Court did not err in denying [Ms. Tucker's] motion for reconsideration"), reh'g en banc denied (3rd Cir. 2018); see also Tucker v. Sec'y Health & Human Servs., 645 F. App'x 136, 137 (3rd Cir. 2016) (describing plaintiff's complaint as "contain[ing] approximately 200 pages of rambling, disjointed, and often incoherent factual statements"); Tucker v. Sec'y Health & Human Servs., 588 F. App'x 110, 114 (3rd Cir. 2014) (stating "[w]e agree with the Secretary that the District Court's prior judgment dismissing Dr. Tucker's first complaint for lack of subject matter jurisdiction had a preclusive effect on, and barred, the second complaint"); Tucker v. Sec'y Health & Human Servs., 487 F. App'x 52, 53 (3rd Cir. 2012) (affirming the District Court's dismissal because "Dr. Tucker did not pursue any of the claims at issue in her complaint to completion"), cert. denied, 568 U.S. 1132 (2013); Tucker v. Hargan, No. 17-13738, 2018 WL 1336134, at *1 (D.N.J. Mar. 15, 2018) (stating that Karen Tucker's complaint "offers nothing that resembles a coherent assertion of how or why she is able to bring suit against the federal government"), aff'd, 734 F. App'x 89 (3rd Cir.), reh'g en banc denied (3rd Cir. 2018); Tucker v. Sebelius, No. 12-5900, 2013 WL 6054552, at *6-7 (D.N.J. Nov. 15, 2013) (stating that, while "this court may not apply res judicata or collateral estoppel," it dismissed her complaint because "no plausible claim to relief exists on the face of the complaint"), aff'd, 588 F. App'x 110 (3rd Cir. 2014); Tucker v. Sebelius, No. 07-2230, 2011 WL 3047651, at *6 (D.N.J. July 25, 2011) (finding that "the government did not rob Plaintiff

of a meaningful opportunity to submit timely documentation in support of her Medicare claims"), aff'd, 487 F. App'x 52 (3rd Cir. 2012), cert. denied, 568 U.S. 1132 (2013); Tucker v. Sebelius, No. 07-2230, 2010 WL 2761525, at *9 (D.N.J. July 10, 2010), aff'd, 487 F. App'x 52 (3rd Cir. 2012), cert. denied, 568 U.S. 1132 (2013).

As described by the District Court for the District of New Jersey in Tucker v. Sebelius, plaintiff was a podiatrist who allegedly rendered Medicare benefits from 1994 to 1998. See Tucker v. Sebelius, 2011 WL 3047651, at *1. In 1996, plaintiff was investigated for health care fraud by Blue Cross Blue Shield of Texas. Id. at *2. According to the District Court for the District of New Jersey, plaintiff subsequently was indicted and charged with multiple counts of health care fraud. Id. at *1. During the criminal investigation, "the Medicare Fair Hearing Office notified Plaintiff that approximately 7,000 of her claims were not supported by adequate documentation and that Plaintiff should submit support for her claims." Id. According to the District Court for the District of New Jersey, in December of 1998:

> Plaintiff pled guilty to one count of health care fraud. On March 5, 1999, Plaintiff was sentenced to six months home confinement, three years probation, and was required to pay $26,402 in restitution to the United States. Following Plaintiff's guilty plea and sentencing, she began to pursue unpaid Medicare claims and to seek permission to submit untimely claims for treatment given as early as January 1996.

Id. at *2. Plaintiff's unpaid Medicare claims were denied by the Centers for Medicare and Medicaid Services, because she was "barred for reinstating her appeals" since "[p]laintiff did not timely submit necessary supporting documentation." Id. In May 2007, "[p]laintiff filed the Complaint requesting payment of all claims, interest, and costs" in the District Court for the District of New Jersey. Id. The District Court granted the defendant's motion to dismiss for lack of subject-matter jurisdiction. Id. Subsequently, plaintiff filed a motion for reconsideration, which the District Court denied. Id. at *5 n.4.

Plaintiff appealed the District Court for the District of New Jersey's July 10, 2010 and July 25, 2011 Opinions to the United States Court of Appeals for the Third Circuit. See Tucker v. Sec'y Health & Human Servs., 487 F. App'x at 53. The Third Circuit affirmed the District Court's dismissal of plaintiff's complaint for lack of subject-matter jurisdiction and denial of the motion for reconsideration. Id. at 57.

Plaintiff then filed a second complaint in the District Court for the District of New Jersey "again seeking payment for the very same Medicare claims that were the basis for her prior complaint." See Tucker v. Sec'y Health & Human Servs., 588 F. App'x at 113. The District Court dismissed plaintiff's complaint and denied plaintiff's post-judgment motion, which was treated as a motion for reconsideration, "[b]ecause no plausible claim to relief exists on the face of the complaint to these causes of action." Tucker v. Sebelius, 2013 WL 6054552, at *7. Plaintiff appealed the District of New Jersey's November 15, 2013 decision to the United States Court of Appeals for the Third Circuit. Tucker v. Sec'y

Health & Human Servs., 588 F. App'x at 113. The Third Circuit affirmed the District Court's Order dismissing the complaint for lack of subject-matter jurisdiction, stating:

> The issue of the District Court's subject matter jurisdiction was actually litigated in Dr. Tucker's first cause of action. Dismissal of the prior suit for lack of subject matter jurisdiction thus barred relitigation of the jurisdictional question . . . . None of Dr. Tucker's new theories of relief involving violations of federal statutes or her constitutional rights correct the jurisdictional problem.

Id. at 114.

Thereafter, plaintiff filed a third complaint with the District Court, which was dismissed, and which plaintiff appealed to the Third Circuit. See Tucker v. Sec'y Health & Human Servs., 645 F. App'x at 137. In 2018, the Third Circuit again held that the "District Court did not err in dismissing Tucker's complaint. As described below, she has repeatedly litigated her request for the Medicare payments, and we have already explained to her why her claims fail." Tucker v. Sec'y Health & Human Servs., 734 F. App'x at 89.

## DISCUSSION

The court recognizes that plaintiff is proceeding pro se. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, a pro se plaintiff is entitled to a more liberal construction of the pro se plaintiff's pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524 (2014), aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 135 S. Ct. 1909 (2015). However, "there is no 'duty [on the part] of the trial court . . . to create a claim which [plaintiff] has not spelled out in his [or her] pleading . . . .'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9; and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Golden v. United States, 129 Fed. Cl. 630, 637 (2016); Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799

(Fed. Cir. 1995))); <u>Harris v. United States</u>, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting <u>Minehan v. United States</u>, 75 Fed. Cl. at 253)).

In the above-captioned case, <u>pro se</u> plaintiff, Karen Tucker, also filed an Application to Proceed <u>In Forma Pauperis</u>. In order to provide access to this court for those who cannot pay the filing fees mandated by RCFC Rule 77.1(c) (2018), 28 U.S.C. § 1915 (2018) permits a court to allow a plaintiff to file a complaint without payment of fees or security, under specific circumstances. Section 1915(a)(1) states that:

> Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner[3] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

28 U.S.C. § 1915(a)(1). Therefore, the statute at 28 U.S.C. § 1915(a)(1) requires a person to submit an affidavit with a statement of all the applicant's assets, and that the affidavit

---

[3] A number of courts have reviewed the words of 28 U.S.C. § 1915(a)(1), regarding <u>in forma pauperis</u> applications by non-prisoner litigants in federal courts, and have concluded that Congress did not intend for non-prisoners to be barred from being able to proceed <u>in forma pauperis</u> in federal court. <u>See, e.g.</u>, <u>Lister v. Dep't of Treasury</u>, 408 F.3d 1309, 1312 (10th Cir. 2005) ("Section 1915(a) applies to all persons applying for [in forma pauperis] status, and not just to prisoners."); <u>Haynes v. Scott</u>, 116 F.3d 137, 139 (5th Cir. 1997) (noting that "[t]here is no indication in the statute or the legislative history of [§ 1915] that Congress meant to curb [in forma pauperis] suits by nonprisoners"); <u>Floyd v. U.S. Postal Serv.</u>, 105 F.3d 274, 275-76 (6th Cir.), <u>reh'g denied</u> (6th Cir. 1997); <u>see also</u> <u>In re Prison Litigation Reform Act</u>, 105 F.3d 1131, 1134 (6th Cir. 1997) (discussing how to administer <u>in forma pauperis</u> rights to a non-prisoner, thereby acknowledging the rights of non-prisoners to apply for <u>in forma pauperis</u> status); <u>Leonard v. Lacy</u>, 88 F.3d 181, 183 (2d Cir. 1996) (using "sic" following the word "prisoner" in 28 U.S.C. § 1915(a)(1) seemingly to indicate that the use of that word was too narrow); <u>Smith v. United States</u>, 113 Fed. Cl. 241, 243 (2013); <u>Powell v. Hoover</u>, 956 F. Supp. 564, 566 (M.D. Pa. 1997) (stating that a "fair reading of the entire section [28 U.S.C. § 1915(a)(1)] is that it is not limited to prisoner suits"). Moreover, 28 U.S.C. § 1915(a)(1) refers to both "person" and "prisoner." The word "person" is used three times in the subsection, while the word "prisoner" is used only once. This court, therefore, finds that the single use of the word "prisoner" in the language of 28 U.S.C. § 1915(a)(1) was not intended to eliminate a non-prisoner from proceeding in federal court <u>in forma pauperis</u>, provided that the civil litigant can demonstrate appropriate need. Any other interpretation is inconsistent with the statutory scheme of 28 U.S.C. § 1915.

state the nature of the action, defense, or appeal and affiant's belief that the person is entitled to redress. See id.

When enacting the in forma pauperis statute, 28 U.S.C. § 1915, Congress recognized that "'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 324 (1989)); see also McCullough v. United States, 76 Fed. Cl. 1, 3 (2006), appeal dismissed, 236 F. App'x 615 (Fed. Cir.), reh'g denied (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007). Accordingly, Congress included subsection (e) in the in forma pauperis statute, which allows courts to dismiss lawsuits determined to be "frivolous or malicious." 28 U.S.C. § 1915(e). The United States Supreme Court has found that "a court may dismiss a claim as factually frivolous only if the facts alleged are 'clearly baseless' . . . a category encompassing allegations that are 'fanciful' . . . 'fantastic' . . . and 'delusional . . . .'" Denton v. Hernandez, 504 U.S. at 32-33 (internal citations omitted); see also Floyd v. United States, 125 Fed. Cl. 183, 191 (2016); Jones v. United States, 122 Fed. Cl. 543, 545 (2015), appeal dismissed (Fed. Cir. 2016); McCullough v. United States, 76 Fed. Cl. at 3; Schagene v. United States, 37 Fed. Cl. 661, 663 (1997). Courts, however, should exercise caution in dismissing a case under section 1915(e) because a claim that the court perceives as unlikely to be successful is not necessarily frivolous. See Denton v. Hernandez, 504 U.S. at 33. As stated by the United States Supreme Court, "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." Id.

The standard in 28 U.S.C. § 1915(a)(1) for in forma pauperis eligibility is "unable to pay such fees or give security therefor." Determination of what constitutes "unable to pay" or unable to "give security therefor," and, therefore, whether to allow a plaintiff to proceed in forma pauperis is left to the discretion of the presiding judge, based on the information submitted by the plaintiff or plaintiffs. See, e.g., Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 217-18 (1993); Roberson v. United States, 115 Fed. Cl. 234, 239, appeal dismissed, 556 F. App'x 966 (Fed. Cir. 2014); Fuentes v. United States, 100 Fed. Cl. 85, 92 (2011). This court and its predecessors were established to make available a user friendly forum in which plaintiffs can submit their legitimate claims against the sovereign, limited only by the legislative decision to waive sovereign immunity as to the types of claims allowed. In fact, prominently posted at the entrance to this courthouse are the words of Abraham Lincoln: "It is as much the duty of government to render prompt justice against itself, in favor of citizens, as it is to administer the same, between private individuals."

Interpreting an earlier version of the in forma pauperis statute, the United States Supreme Court offered the following guidance:

> We cannot agree with the court below that one must be absolutely destitute to enjoy the benefit of the statute. We think an affidavit is sufficient which states that one cannot because of his poverty "pay or give security for the

costs . . . and still be able to provide" himself and dependents "with the necessities of life." To say that no persons are entitled to the statute's benefits until they have sworn to contribute to payment of costs, the last dollar they have or can get, and thus make themselves and their dependents wholly destitute, would be to construe the statute in a way that would throw its beneficiaries into the category of public charges. The public would not be profited if relieved of paying costs of a particular litigation only to have imposed on it the expense of supporting the person thereby made an object of public support. Nor does the result seem more desirable if the effect of this statutory interpretation is to force a litigant to abandon what may be a meritorious claim in order to spare himself complete destitution. We think a construction of the statute achieving such consequences is an inadmissible one.

Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339-40 (1948) (omissions in original). In Fiebelkorn v. United States, for example, a Judge of the United States Court of Federal Claims indicated that:

> [T]he threshold for a motion to proceed in forma pauperis is not high: The statute requires that the applicant be 'unable to pay such fees.' 28 U.S.C. § 1915(a)(1). To be 'unable to pay such fees' means that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute.

Fiebelkorn v. United States, 77 Fed. Cl. 59, 62 (2007); see also McDermott v. United States, 130 Fed. Cl. 412, 414 (quoting Fiebelkorn v. United States, 77 Fed. Cl. at 62), aff'd, No. 2017-1790, 2017 WL 4082033 (Fed. Cir. June 13, 2017); Conerly v. United States, 137 Fed. Cl. 140, 142 (2018); Fuentes v. United States, 100 Fed. Cl. at 92; Brown v. United States, 76 Fed. Cl. 762, 763 (2007); Hayes v. United States, 71 Fed. Cl. 366, 369 (2006).

In her Application to Proceed In Forma Pauperis in this court, plaintiff indicates that she is currently unemployed. Plaintiff checked the "No" column in her application indicating that she has not received any money within the past twelve months in the form of "[r]ent payments, interest, or dividends," "[p]ensions, annuities, or life insurance payments," and "[g]ifts or inheritances." In response to the question, "[h]ow are you paying for your expenses," plaintiff replied that she "is homeless and indigent relying on the kindness of family and friends for food and shelter." In response to the question, "[h]ow much money do you have in cash or in a checking, savings, or inmate account," plaintiff replied "0." Plaintiff stated that she has debts of "600,000 student loans Nelnet and Sallie Mae." Based on the plaintiff's representations in her Application to Proceed In Forma Pauperis, plaintiff appears to be unable to pay the court's filing fee. As discussed in detail below, however, plaintiff's Application to Proceed In Forma Pauperis is moot because her complaint is being dismissed for failure to state a claim and lack of subject-matter jurisdiction.

In examining what must be pled in order to state a claim, a plaintiff need only state in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2) (2018); see also Bell Atl. Corp. v. Twombly, 550 U.S. at 555. The United States Supreme Court has stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [Conley v. Gibson, 355 U.S. 41, 47 (1957)]; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n.1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely") . . . . [W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.

Bell Atl. Corp. v. Twombly, 550 U.S. at 555-56, 570 (footnote and other citations omitted; omissions in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-57, 570); Frankel v. United States, 842 F.3d 1246, 1249 (Fed. Cir. 2016); A&D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1157 (Fed. Cir. 2014); Bell/Heery v. United States, 739 F.3d 1324, 1330 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2014); Kam-Almaz v. United States, 682 F.3d 1364, 1367 (Fed. Cir. 2012) ("The facts as alleged 'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557)); Totes-Isotoner Corp. v. United States, 594 F.3d 1346, 1354-55 (Fed. Cir.), cert. denied, 562 U.S. 830 (2010); Bank of Guam v. United States, 578 F.3d 1318, 1326 (Fed. Cir.) ("In order to avoid dismissal for failure to state a claim, the complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557)), reh'g and reh'g en banc denied (Fed. Cir. 2009), cert. denied, 561 U.S. 1006 (2010); Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009) ("[A] plaintiff must plead factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)); Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir.) ("The factual

allegations must be enough to raise a right to relief above the speculative level. This does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 570)), reh'g denied (Fed. Cir.), cert. denied, 557 U.S. 937 (2009); Christen v. United States, 133 Fed. Cl. 226, 229 (2017); Christian v. United States, 131 Fed. Cl. 134, 144 (2017); Vargas v. United States, 114 Fed. Cl. 226, 232 (2014); Fredericksburg Non-Profit Housing Corp. v. United States, 113 Fed. Cl. 244, 253 (2013), aff'd, 579 F. App'x 1004 (Fed. Cir. 2014); Peninsula Grp. Capital Corp. v. United States, 93 Fed. Cl. 720, 726-27 (2010), appeal dismissed, 454 F. App'x 900 (Fed. Cir. 2011); Legal Aid Soc'y of N.Y. v. United States, 92 Fed. Cl. 285, 292, 298 n.14 (2010).

When deciding a case based on a failure to state a claim, the court "must accept as true the factual allegations in the complaint." Engage Learning, Inc. v. Salazar, 660 F.3d 1346, 1355 (Fed. Cir. 2011); see also Erickson v. Pardus, 551 U.S. at 94 ("In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-56 (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982), recognized by Davis v. Scherer, 468 U.S. 183, 190 (1984); Harris v. United States, 868 F.3d 1376, 1379 (Fed. Cir. 2017) (citing Call Henry, Inc. v. United States, 855 F.3d 1348, 1354 (Fed. Cir. 2017)); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006); Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003).

In the above-captioned case, plaintiff's November 21, 2018 complaint contains fifty-one single-spaced pages of incoherent rambling. Many of plaintiff's allegations randomly appear in plaintiff's complaint without context as to the relevance or significance of the allegation. For example, plaintiff's complaint often inserts quotations from an unidentified transcript without indicating who the speakers in the transcript are or how the quoted material supports or relates to plaintiff's allegations. The court has, repeatedly, attempted to construe plaintiff's complaint in a manner that would harmonize plaintiff's allegations in a semi-logical way, but plaintiff's complaint is so bizarrely written that it cannot possibly state a claim upon which relief may be granted. Moreover, plaintiff's complaint also loosely, and incorrectly, uses legal terms without explaining why plaintiff believes the legal term to be relevant to her claims or what plaintiff believes the legal term to mean. Although, as discussed below, the court is dismissing plaintiff's complaint for lack of jurisdiction, the court notes that plaintiff's convoluted complaint also fails to state claim.

As indicated above, defendant has moved to dismiss the plaintiff's complaint for lack of subject-matter jurisdiction. "Subject-matter jurisdiction may be challenged at any

time by the parties or by the court <u>sua sponte</u>." <u>Folden v. United States</u>, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (citing <u>Fanning, Phillips & Molnar v. West</u>, 160 F.3d 717, 720 (Fed. Cir. 1998)); <u>see also Int'l Elec. Tech. Corp. v. Hughes Aircraft Co.</u>, 476 F.3d 1329, 1330 (Fed. Cir. 2007). The Tucker Act, 28 U.S.C. § 1491 (2018), grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. <u>See United States v. Navajo Nation</u>, 556 U.S. 287, 289-90 (2009); <u>see also United States v. Mitchell</u>, 463 U.S. 206, 216 (1983); <u>Alvarado Hosp., LLC v. Price</u>, 868 F.3d 983, 991 (Fed. Cir. 2017); <u>Greenlee Cnty., Ariz. v. United States</u>, 487 F.3d 871, 875 (Fed. Cir.), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2007), <u>cert. denied</u>, 552 U.S. 1142 (2008); <u>Palmer v. United States</u>, 168 F.3d 1310, 1314 (Fed. Cir. 1999). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." <u>United States v. Mitchell</u>, 463 U.S. at 216; <u>see also United States v. White Mountain Apache Tribe</u>, 537 U.S. 465, 472 (2003); <u>N.Y. & Presbyterian Hosp. v. United States</u>, 881 F.3d 877, 881 (Fed. Cir. 2018); <u>Smith v. United States</u>, 709 F.3d 1114, 1116 (Fed. Cir.), <u>cert. denied</u>, 571 U.S. 945 (2013); <u>RadioShack Corp. v. United States</u>, 566 F.3d 1358, 1360 (Fed. Cir. 2009); <u>Rick's Mushroom Serv., Inc. v. United States</u>, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); <u>Golden v. United States</u>, 118 Fed. Cl. 764, 768 (2014). In <u>Ontario Power Generation, Inc. v. United States</u>, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The <u>Ontario Power Generation, Inc.</u> court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." <u>Eastport S.S. [Corp. v. United States</u>, 178 Ct. Cl. 599, 605-06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting

Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . .
Third, the Court of Federal Claims has jurisdiction over those claims where
"money has not been paid but the plaintiff asserts that he is nevertheless
entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007.
Claims in this third category, where no payment has been made to the
government, either directly or in effect, require that the "particular provision
of law relied upon grants the claimant, expressly or by implication, a right to
be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S.
[392,] 401-02 [1976] ("Where the United States is the defendant and the
plaintiff is not suing for money improperly exacted or retained, the basis of
the federal claim-whether it be the Constitution, a statute, or a regulation-
does not create a cause of action for money damages unless, as the Court
of Claims has stated, that basis 'in itself . . . can fairly be interpreted as
mandating compensation by the Federal Government for the damage
sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is
commonly referred to as claims brought under a "money-mandating"
statute.

Ont. Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see
also Samish Indian Nation v. United States, 419 F.3d at 1364; Twp. of Saddle Brook v.
United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must
demonstrate that an independent source of substantive law relied upon "'can fairly be
interpreted as mandating compensation by the Federal Government.'" United States v.
Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. at 400); see
also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v.
Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed.
Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief
must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S.
at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional
provision[] that operate[s] to waive sovereign immunity for claims premised on other
sources of law (e.g., statutes or contracts)."). "'If the statute is not money-mandating, the
Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject
matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299,
1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876);
see also N.Y. & Presbyterian Hosp., 881 F.3d at 881; Fisher v. United States, 402 F.3d
1167, 1173 (Fed. Cir. 2005) (noting that the absence of a money-mandating source is
"fatal to the court's jurisdiction under the Tucker Act"); Price v. United States, 133 Fed.
Cl. 128, 130 (2017); Peoples v. United States, 87 Fed. Cl. 553, 565-66 (2009).

When deciding a case based on a lack of subject-matter jurisdiction or for failure
to state a claim, this court must assume that all undisputed facts alleged in the complaint
are true and must draw all reasonable inferences in the non-movant's favor. See Erickson
v. Pardus, 551 U.S. at 94 ("[W]hen ruling on a defendant's motion to dismiss, a judge
must accept as true all of the factual allegations contained in the complaint." (citing Bell

Atl. Corp. v. Twombly, 550 U.S. at 555-56 (citing Swierkiewicz v. Sorema N. A., 534 U.S. at 508 n.1))); see also Frankel v. United States, 842 F.3d at 1249 ("In deciding a motion to dismiss, a court is required to accept as true all factual allegations pleaded." (citing Ashcroft v. Iqbal, 556 U.S. at 678)); Fid. & Guar. Ins. Underwriters, Inc. v. United States, 805 F.3d 1082, 1084 (Fed. Cir. 2015); Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2018); Fed. R. Civ. P. 8(a)(1), (2) (2019); see also Ashcroft v. Iqbal, 556 U.S. at 677-78 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-57, 570). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1286 (3d ed. 2004)); Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981) ("[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss."), aff'd, 460 U.S. 325 (1983). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

In plaintiff's complaint in this court, plaintiff has asserted numerous allegations for which she seeks relief, including: a general violation of "Constitution due process," stating that there has been "manifest injustice, prejudice injustice and miscarriage of justice" and that she has "suffered deprivation of life, liberty and property interest in violation of Due Process 42 U.S. Code § 1983." In plaintiff's complaint, plaintiff cites to "42 U.S.C. § 1983" as a basis for jurisdiction in this court. In its motion to dismiss, defendant argues that this court does not have jurisdiction to review claims pursuant to 42 U.S.C. § 1983 (2018). (citing Doe v. United States, 74 Fed. Cl. 794, 798 (2006)). Defendant contends:

> Section 1983 permits "any citizen of the United States or other person within the jurisdiction thereof" to seek redress at either law or equity for "deprivation of any rights, privileges, or immunities secured by the

Constitution and laws . . . ." 42 U.S.C. § 1983. Jurisdiction to entertain such claims is conferred exclusively upon district courts. 28 U.S.C. § 1343(a)(4).

(omission in original).

The statute at 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id. The statute at 28 U.S.C. § 1343(a)(4) (2018) states: "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person . . . [t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote." Id. To the extent plaintiff is trying to allege a general violation of her civil rights under 42 U.S.C. § 1983, the United States Court of Federal Claims lacks jurisdiction to hear claims alleging a deprivation of civil rights under color of law. See Elkins v. United States, 229 Ct. Cl. 607, 608 (1981) ("[W]e do not have jurisdiction over claims based upon alleged violations of the civil rights laws." (citation omitted)); see also Weir v. United States, 141 Fed. Cl. 169, 177-78 (2018); Johnson v. United States, 135 Fed. Cl. 565, 575 (2017) ("Section 1343 of Title 28 provides the federal District Courts original jurisdiction over any relief requested under an 'Act of Congress providing for the protection of civil rights.'" (citations omitted)); Vincent v. United States, 135 Fed. Cl. 561, 563 (2017) ("[A]ctions for civil rights violations brought under 42 U.S.C. § 1983 (2012) cannot be heard by this court." (citing Marlin v. United States, 63 Fed. Cl. 475, 476 (2005), appeal dismissed, 146 F. App'x 491 (Fed. Cir. 2005))), aff'd, 733 F. App'x 529 (Fed. Cir. 2018); Wagstaff v. United States, 105 Fed. Cl. 99, 109 (2012); May v. United States, 104 Fed. Cl. 278, 284 (2012), aff'd, 534 F. App'x 930 (Fed. Cir. 2013). Furthermore, in Blassingame v. United States, a judge of this court determined that jurisdiction is lacking over claims brought pursuant to civil rights laws, including 42 U.S.C. § 1983, as jurisdiction for such claims remains exclusively with the United States District Courts. The Blassingame court stated:

> Section 1983 is not a jurisdiction-granting statute. District courts are given jurisdiction to hear claims for damages for violation of that provision by virtue of 28 U.S.C. § 1343(a)(4) (1988). Such an action cannot be sustained here, however, because this court has not been given an equivalent jurisdiction. See Sanders v. United States, 32 Fed. Cl. 573, 576 (1995); Anderson v. United States, 22 Cl. Ct.178, 179 n. 2 (1990), aff'd, 937 F.2d 623 (Fed. Cir. 1991).

Blassingame v. United States, 33 Fed. Cl. 504, 505, aff'd, 73 F.3d 379 (Fed. Cir. 1995), reh'g denied (Fed. Cir.), cert. denied, 517 U.S. 1237 (1996). Accordingly, this court dismisses any of plaintiff's claims which may allege violations under 42 U.S.C. § 1983 for lack of jurisdiction.

Plaintiff also tries to allege a violation of the "protections guaranteed by the due process clause of the Fourteenth Amendment in violation of the Constitution" and the "colorable due process clause of 14th Amendment." Defendant does not specifically address plaintiff's claim alleging a violation of the Fourteenth Amendment, although the defendant, in the motion to dismiss, asserts that "this Court cannot exercise jurisdiction over any of Ms. Tucker's claims." The United States Court of Appeals for the Federal Circuit has held that this court does not possess jurisdiction to consider claims arising under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (concluding that the United States Court of Federal Claims has no jurisdiction over a due process violation under the Fifth and Fourteenth Amendments (citing LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995))); see also Smith v. United States, 709 F.3d at 1116 ("The law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act." (citing LeBlanc v. United States, 50 F.3d at 1028)); In re United States, 463 F.3d 1328, 1335 n.5 (Fed. Cir.) ("[B]ecause the Due Process Clause is not money-mandating, it may not provide the basis for jurisdiction under the Tucker Act."), reh'g and reh'g en banc denied (Fed. Cir. 2006), cert. denied sub nom. Scholl v. United States, 552 U.S. 940 (2007); Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States, 458 F.3d 1327, 1334 (Fed. Cir. 2006); Collins v. United States, 67 F.3d 284, 288 (Fed. Cir.) ("[T]he due process clause does not obligate the government to pay money damages."), reh'g denied (Fed. Cir. 1995); Mullenberg v. United States, 857 F.2d 770, 773 (Fed. Cir. 1988) (finding that the Due Process clauses "do not trigger Tucker Act jurisdiction in the courts"); Murray v. United States, 817 F.2d 1580, 1583 (Fed. Cir. 1987) (noting that the Fifth Amendment Due Process clause does not include language mandating the payment of money damages); Vondrake v. United States, 141 Fed. Cl. 599, 602 (2019) (citing Smith v. United States, 709 F.3d at 1116); Weir v. United States, 141 Fed. Cl. 169, 177 (2018); Maehr v. United States, 139 Fed. Cl. 1, 3-4 (2018) (stating that Smith v. United States, 709 F.3d at 1114, "remains controlling law today"); Zainulabeddin v. United States, 138 Fed. Cl. 492, 505 (2018) (citing LeBlanc v. United States, 50 F.3d at 1028); Harper v. United States, 104 Fed. Cl. 287, 291 n.5 (2012); Hampel v. United States, 97 Fed. Cl. 235, 238, aff'd, 429 F. App'x 995 (Fed. Cir. 2011), cert. denied, 565 U.S. 1153 (2012). Due process claims "must be heard in District Court." Kam-Almaz v. United States, 96 Fed. Cl. 84, 89 (2011) (citing Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States, 458 F.3d at 1334), aff'd, 682 F.3d 1364 (Fed. Cir. 2012). Accordingly, this court does not have jurisdiction over any of plaintiff's Fourteenth Amendment due process claims, and those claims by plaintiff are dismissed.

In plaintiff's complaint, further allegations include that plaintiff "has suffered deprivation of affective assistance of counsel in violation of Sixth Amendment" in one of the cases plaintiff litigated prior to filing the above-captioned case. Defendant, in its

motion to dismiss, argues that the court does not possess jurisdiction to hear claims based on the Sixth Amendment to the Constitution (citing Ogden v. United States, 61 Fed. Cl. 44, 47 (2004)). Insofar as plaintiff's claims allege a violation of her rights under the Sixth Amendment to the United States Constitution, the Sixth Amendment is not money-mandating and, therefore, jurisdiction to review these claims does not lie in this court. See Dupre v. United States, 229 Ct. Cl. 706, 706 (1981) ("[T]he fourth and sixth amendments do not in themselves obligate the United States to pay money damages; and, therefore, we have no jurisdiction over such claims."); see also Taylor v. United States, 139 Fed. Cl. 4, 8 (2018) (stating that "the court has determined that it does not have jurisdiction to adjudicate the Sixth Amendment claims"), aff'd, 747 F. App'x 863 (Fed. Cir. 2019); Turpin v. United States, 119 Fed. Cl. 704, 707 (2015) ("To the extent that Ms. Turpin's complaint brings constitutional challenges under the Due Process Clause and the Sixth Amendment, the Court cannot hear such claims because neither of these constitutional provisions is a money-mandating source."); Gable v. United States, 106 Fed. Cl. 294, 298 (2012) ("[T]he United States Court of Federal Claims does not have jurisdiction to adjudicate the alleged violations of Plaintiff's Sixth Amendment rights, because that constitutional provision is not money-mandating."); Treece v. United States, 96 Fed. Cl. 226, 231 (2010) (citing Milas v. United States, 42 Fed. Cl. 704, 710, aff'd, 217 F.3d 854 (Fed. Cir. 1999)); Smith v. United States, 51 Fed. Cl. 36, 38 (2001) (finding that the Court of Federal Claims lacks jurisdiction over Sixth Amendment ineffective assistance of counsel claims), aff'd, 36 F. App'x 444 (Fed. Cir.), reh'g denied, 42 F. App'x 469 (Fed. Cir.), cert. denied, 537 U.S. 1010 (2002). Therefore, this court lacks jurisdiction over plaintiff's sixth amendment claim and that claim is dismissed.

Plaintiff continues by alleging that "Defendant(s) that include US Prosecutor Leonard Senerote and Peter Winn misconduct caused Plaintiff false arrest, false imprisonment based on false statements and fraudulent misrepresentations." These allegations, however, sound in tort, over which this court also does not have jurisdiction. See Leitner v. United States, 92 Fed. Cl. 220, 224 (2010) ("False imprisonment is a tort, and the Tucker Act bars claims sounding in tort from the jurisdiction of this Court." (citation omitted)); Zhao v. United States, 91 Fed. Cl. 95, 100 (2010) (noting that a claim of false imprisonment is a tort claim and that the United States Court of Federal Claims lacks jurisdiction over tort claims); see also 28 U.S.C. § 1491(a); Keene Corp. v. United States, 508 U.S. 200, 214 (1993) (stating that "tort cases are outside the jurisdiction of the Court of Federal Claims"); Rick's Mushroom Serv., Inc., 521 F.3d at 1343 (stating that "[t]he plain language of the Tucker Act excludes from the Court of Federal Claims jurisdiction claims sounding in tort"); Alves v. United States, 133 F.3d 1454, 1459 (Fed. Cir. 1998); Brown v. United States, 105 F.3d 621, 623 (Fed. Cir.), reh'g denied (Fed. Cir. 1997); Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1070 n.8 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 513 U.S. 961 (1994); Rohland v. United States, 136 Fed. Cl. 55, 65 (2018) (citing 28 U.S.C. § 1491(a); and Rick's Mushroom Serv., Inc., 521 F.3d at 1343); Golden v. United States, 118 Fed. Cl. at 770; Hampel v. United States, 97 Fed. Cl. at 238; Woodson v. United States, 89 Fed. Cl. 640, 650 (2009). Therefore, this court does not have jurisdiction over plaintiff's tort claims and those claims are dismissed.

In addition to plaintiff's other claims, plaintiff's complaint repeatedly uses the phrase "breach of contract." In a section of plaintiff's complaint titled "Contract Disputes Act, 41 U.S.C. § 701," for example, Ms. Tucker states:

> Plaintiff argues **states a claim** for equitable tolling 4(a)(4)(vi) breach of Medicare Part B Provider contract in the sum certain claim amount of $1,652,000 dollars; breach of Medicare Part B Provider count 16 Zala Farley October 21, 1996 claim of $75 dollars plea and factual resume contract and breach of Title 18 U.S.C. § 1347 March 5-10, 1999 judgment **contract cause of action under the Contract Disputes Act (CDA) constitutes such a waiver.**

In addition, Ms. Tucker contends that the court "may find that the parties' relationship is sufficiently like a contract for the law to assume that there was an *implied* agreement which is enforceable under New Jersey contract law."

In the motion to dismiss, defendant argues that plaintiff "claims that she 'has identified an independent Medicare Part B Provider contractual relationship agreed with Defendant(s) (exhibit 60),'" but that "Ms. Tucker does not, however, provide additional details regarding the alleged 'contractual relationship.'" (internal references omitted). Defendant also argues:

> Even if the Court were to assume that Ms. Tucker is referring to the podiatry care that she alleges (in other parts of her complaint) that she performed between 1995 and 1998, that work was performed 20 years before the complaint was filed in this case. Every claim over which this Court possesses jurisdiction is barred unless a complaint containing the claims is filed within six years after the claim first accrues. 28 U.S.C. § 2501.

The United States Court of Appeals for the Federal Circuit has described the elements necessary to show a contract with the United States: "The requirements for a valid contract with the United States are: a mutual intent to contract including offer, acceptance, and consideration; and authority on the part of the government representative who entered or ratified the agreement to bind the United States in contract." Total Med. Mgmt., Inc. v. United States, 104 F.3d 1314, 1319 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir. 1997), cert. denied, 522 U.S. 857 (1997). Moreover, it is clear that:

> A party alleging either an express or implied-in-fact contract with the government "must show a mutual intent to contract including an offer, an acceptance, and consideration." Trauma Serv. Group [v. United States], 104 F.3d [1321,] 1325 [(Fed. Cir. 1997)]. Furthermore, "[a] contract with the United States also requires that the Government representative who entered or ratified the agreement had actual authority to bind the United States." Id.

<u>Bank of Guam v. United States</u>, 578 F.3d at 1326 (fourth alteration in original).

In the above-captioned case, the "Exhibit 60 Medicare Part B Provider Contract" plaintiff attached to her April 8, 2019 filing, but not to her November 21, 2018 complaint, contains a document titled "AGREEMENT FOR AUTOMATIC CLAIMS SUBMISSION," which is dated November 14, 1994. The November 14, 1994 Agreement for Automatic Claims Submission indicates that the agreement is between a group of companies called "Contractors," which consists of "Group Medical & Surgical Service, Blue Cross and Blue Shield of Texas, Inc., and Group Life Health Insurance Company," and a "Provider," who is identified as Karen Tucker. Under the November 14, 1994 Agreement for Automatic Claims Submission, the Contractors are to "process and pay claims for the Medicare, and/or Blue Shield programs in the State of Texas" that are submitted by Karen Tucker. Raymond Hunter, whose title is listed as "Senior Vice President Information Management," signed on behalf of the Contractors.

The November 14, 1994 Agreement for Automatic Claims Submission appears to be an agreement between Karen Tucker and three private companies, under which the "Contractors" would process and pay reimbursable and eligible claims for medical services provided by Karen Tucker. The November 14, 1994 Agreement for Automatic Claims Submission does not contain the signature of a government official with the authority to bind the United States to a contract, nor does the November 14, 1994 Agreement indicate that the United States was a party to the November 14, 1994 Agreement for Automatic Claims Submission.

Ms. Tucker has not shown that a valid express contract or implied-in-fact contract existed between her and the United States. None of the exhibits attached to plaintiff's complaint or submitted as part of her April 8, 2019 filing in the above-captioned case indicate the existence of a contract with the United States. Further, plaintiff repeatedly fails to specify who, if anyone, represented the United States when entering the alleged contract and whether that representative had the requisite authority to enter into the agreement in a manner as to bind the United States. Therefore, plaintiff has failed to allege facts sufficient to demonstrate that an express contract or implied-in-fact contract with the United States was entered into or to identify the terms of a contract that have been breached.

Moreover, plaintiff's contract allegations appear to have occurred on or around "October 21, 1996," "March 5-10, 1999 judgment contract," and "January 1995 -February 1998." According to 28 U.S.C. § 2501 (2018), "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501; <u>see</u> <u>also</u> <u>John R. Sand & Gravel Co. v. United States</u>, 457 F.3d 1345, 1354 (Fed. Cir.) (stating that "[t]he six-year statute of limitations set forth in section 2501 is a jurisdictional requirement for a suit in the Court of Federal Claims" (citation omitted)), <u>reh'g</u> <u>en</u> <u>banc</u> <u>denied</u> (Fed. Cir. 2006), <u>aff'd</u>, 552 U.S. 130 (2008). As the defendant correctly points out in the motion to dismiss, plaintiff cites alleged contract claims involving work allegedly performed over twenty years

ago. Therefore, any possible claim of a breach of contract that plaintiff alleges in her complaint, all of which appear to have occurred in the 1990s, is barred by the statute of limitations under 28 U.S.C. § 2501. Thus, plaintiff's breach of contract claims are dismissed.

In plaintiff's complaint, Ms. Tucker also requests that this court "remov[e] the felony stigma to clear Plaintiff's name for a claim for wrongful erroneous conviction under Title 18 U.S.C. § 1347." Plaintiff's complaint asserts:

> Plaintiff can show the Federal Claims Court has exclusive jurisdiction over this civil suit against the Defendant(s) for equitable tolling 4(a)(4)(vi) breach of Medicare Part B Provider contract in the sum certain claim amount of $1,652,000 dollars, breach of Medicare Part B Provider count 16 patient Zala Farley October 21, 1996 $75 dollar claim plea and factual resume contract that does not state a breach of contract; a crime or felony of law under Title 18 U.S.C. § 1347.

In the motion to dismiss, however, defendant argues:

> With regard to Ms. Tucker's allegations regarding her conviction for Medicare fraud, this Court possesses limited jurisdiction to entertain claims for compensation based upon unjust conviction and imprisonment. See 28 U.S.C. § 1495; 28 U.S.C. § 2513. These statutes are strictly construed. Vincin v. United States, 468 F.2d 930, 933 (Ct. Cl. 1972). This Court does not possess the power to review and overturn convictions or to review in detail the facts surrounding a conviction or imprisonment. Humphrey v. United States, 52 Fed. Cl. 593, 596 (2002). Instead, this Court may hear a claim for money damages related to unjust imprisonment only after a court has reversed a plaintiff's conviction on the grounds of innocence, or if the President of the United States has pardoned the plaintiff. Brown v. United States, 42 Fed. Cl. 139, 141-42 (1998); Lott v. United States, 11 Cl. Ct. 852, 853 (1987).[4]

---

4 Under 28 U.S.C. § 1495 (2018), "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned." 28 U.S.C. § 1495; see also Humphrey v. United States, 52 Fed. Cl. 593, 596 (2002) (stating 28 U.S.C. § 1495 "must be read in conjunction with 28 U.S.C. § 2513"), aff'd, 60 F. App'x 292 (Fed. Cir. 2003). The statute at 28 U.S.C. § 2513 (2018) requires that a person suing under 28 U.S.C. § 1495 must demonstrate:

> (1) His conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted, or on new trial or rehearing he was found not guilty of such offense, as appears from the record or certificate of the court setting aside or reversing such

Additionally, the defendant argues that:

> To the extent that Ms. Tucker is attempting to attack the (five) decisions of the district court and Third Circuit rejecting her identical claims, this Court may not review the merits of a decision by a United States District Court. Shinnecock Indian Nation v. United States, 782 F.3d 1345, 1352 (Fed. Cir. 2015) ("Binding precedent establishes that the Court of Federal Claims has no jurisdiction to review the merits of a decision rendered by a federal district court.") (citing Joshua v. United States, 17 F.3d 378,380 (Fed. Cir. 1994))."

The statute at 18 U.S.C. § 1347 (2018), cited by plaintiff, has been described as "mak[ing] it unlawful to 'defraud any health care benefit program . . . in connection with the delivery of or payment for health care benefits, items, or services.'" See United States v. DeLia, 906 F.3d 1212, 1219 (10th Cir. 2018) (omission in original) (quoting 18 U.S.C. § 1347); see also United States v. Bertram, 900 F.3d 743, 748 (6th Cir. 2018) (stating that 18 U.S.C. § 1347 makes it a crime for individuals "'to defraud any health care benefit program'" (quoting 18 U.S.C. § 1347)), cert. denied, 139 S. Ct. 852 (2019). This court, however, does not have jurisdiction to consider claims that "'amount to collateral attacks on criminal convictions,'" including a conviction under 18 U.S.C. § 1347. See Beadles v. United States, 115 Fed. Cl. 242, 245 (2014) (quoting Perkins v. United States, No. 13-023C, 2013 WL 3958350, at *3 (Fed. Cl. July 31, 2013)). Generally, this court lacks jurisdiction to review the merits of a decision of another federal court. See Joshua v. United States, 17 F.3d at 380 ("[T]he Court of Federal Claims does not have jurisdiction to review the decisions of district courts or the clerks of district courts relating to proceedings before those courts."); see also Rohland v. United States, 136 Fed. Cl. at 66 ("[T]he Tucker Act does not provide the Court of Federal Claims with jurisdiction to entertain collateral attacks on decisions of state courts or federal district courts." (citations omitted)). Plaintiff's claims involving the decisions of other courts, therefore, are outside of this court's jurisdiction.

---

> conviction, or that he has been pardoned upon the stated ground of innocence and unjust conviction and
>
> (2) He did not commit any of the acts charged or his acts, deeds, or omissions in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia, and he did not by misconduct or neglect cause or bring about his own prosecution.

28 U.S.C. § 2513(a)(1)-(2) (2018). Plaintiff has failed to invoke the court's jurisdiction under 28 U.S.C. § 1495, as plaintiff has not alleged, or provided evidence to the court, indicating that Ms. Tucker's conviction has been reversed through a certificate or a certified copy of a pardon pursuant to 28 U.S.C. § 2513.

## CONCLUSION

The court **GRANTS** defendant's motion to dismiss, and plaintiff's complaint is **DISMISSED** for failure to state a claim and for lack of subject-matter jurisdiction. Plaintiff's Application to Proceed In Forma Pauperis is **MOOT**. The Clerk of Court shall enter **JUDGMENT** consistent with this Opinion.

   **IT IS SO ORDERED**.

                                   **MARIAN BLANK HORN**
                                   **Judge**